Good morning. May it please the court, I'm Linda Ziskin, attorney for plaintiff Ellen Hancock. Another social security case. This one has to do with vocational issues at step five. The Barnhart name gave it away. I'm sorry, your honor? The Barnhart name gave it away. Yeah, I figured you would catch that. However, the difference here is that we are really talking about step five. I would really like to focus very narrowly on that issue. It's the most interesting legal issue in this case. We have a vocational issue with two facets. Facet number one is whether 101 jobs, and the job is a surveillance system monitor, is that enough to constitute significant numbers of jobs in either the regional economy, national economy, or the state of Oregon? In the national economy, though, it's not 101. No, it was 18,000. Right. So, I mean, is it a disjunctive test? So, let's assume 101 isn't enough for the local economy, but there are enough in the regional economy. Well, and... Does your client lose them? No. Actually, under 42 U.S.C. 423 D, what you're also looking at are other factors like the claimant's ability to travel, where these jobs are, and California is a big state. We if there were jobs of this nature here in Oregon, for example, in Pendleton, is it reasonable to assume that kind of a commute, which is similar to the California commute I just mentioned, it's not a reasonable kind of job for this person to have. So, you do need to look at all these factual questions. When you... Going back to the second facet, which is the facet I want to argue of this whether 101 are enough, or 18,000 are enough, or whether it's reasonable to drive to Santa Barbara or Hermiston every day. It is not for the commissioner's attorney to make that decision. It is not for the district court to make that decision. It's a finding of fact that must be made at the agency level by the ALJ, who is the finder of fact, and citing the controlling case here is SEC v. Chenery, Supreme Court, 1947. This is a long-established principle of administrative law. That is the controlling authority in this case. This case was not mentioned by the commissioner at all, but this is the case that I want to focus on. This case, if this court finds, this court can find that 101 jobs is not enough. I briefed all the cases all over the country and in this circuit where the bright line is really unable to be found, but they're trying, and there's a big, dim, fuzzy line out there saying that maybe 150 is enough, maybe 500 is enough. If this court wants to go there and make that decision today, this would be the case to do it, because 101 jobs out of 4 million people in the state of Oregon is really not, by any stretch of the imagination, a significant number. In fact... Why would we want to do that, if you're correct, and it wasn't addressed by the ALJ, and the ALJ, when properly charged, in the first instance, as you say, with making the factual assessment based on his expertise and whatever focused evidence can be brought to bear? Well, that would be the clearest route of remand for this court to take, and I believe it would be probably the right way to go. I am just suggesting to you, because there seemed to be some confusion... Well, if it's worth anything, this judge doesn't feel very comfortable deciding ex cathedra that there's a bright line. I'll never get nominated for the Supreme Court, but I certainly wouldn't want to be accused of judicial activism. Well, it is. It is judicial line drawing, in a sense, and this court, this circuit, has said that we are not going to do that. So I'm just putting it out there because the courts are wrestling with this. It's a big issue, not only in the circuit, but all over the country. So it is out there. I just want to present it to you. I am saying that a remand on the basis of Chenery is the clearest route here for a remedy. And the other thing that I would like to mention also is that the Commissioner's arguments about whether this is a factual issue or an issue of law, I'm not really clear exactly where she's landing on that. This is a factual matter. This is a finding of fact that must be made by the ALJ. The problem here is that, yes, the ALJ had substantial evidence and made a finding of fact at that time, at the time he made the decision. It wasn't until later that the Commissioner's attorney, on her own, without even being argued to about this in the plaintiff's opening brief at the district court level, she took it upon herself to take five out of the six proffered jobs off the table. The two VEs in the two hearings had come up with six possible jobs, one of which was surveillance system monitoring. She withdrew five of them. The ALJ had no way of knowing that she did that. So, yeah, it's correct that he possibly, arguably, based his decision on substantial evidence at that time. But after she conceded that five out of the six jobs either were outside of the plaintiff's RFC or were not suitable because they involved transferable skills, for whatever reason, she withdrew them, leaving the one. She doesn't get to say that the one is enough. It's the ALJ that now must go back, look at this again, and say, okay, now there's only one job left on the table. Is that enough? Okay. Well, maybe we should hear from the Social Security representatives to see whether they agree with your decision. Well, okay. I have almost four minutes remaining, so I will reserve that. Thank you very much. Good morning, Your Honors. I'm Daphne Binet, representing the Commissioner of Social Security Administration. Before I get into our main arguments here, I would just like to correct counsel's statement that the Social Security Act and the regulations consider factors such as whether it's a reasonable commute in determining whether a job exists in a significant number in the national economy. I would direct the court to the plain language of the regulations at 404.15.66. It specifically says that it doesn't matter whether work exists in the immediate area where a claimant lives. I can't hear you. You're speaking down. Sorry, Your Honor. So the plain language of the regulations in the Social Security Act do not speak to factors such as is there a reasonable commute. It speaks in terms of whether or not there's a significant number of jobs either in the region where a claimant lives or in several regions of the country. I intended to ask you about that, so I will right now since you raised it. As I understand it, the statute speaks in disjunctive terms about the statute itself, apart from regulations about significant jobs in the local area or the national economy. That's correct, Your Honor. Are there regulations or precedent that hem in whether a person has to relocate to get a job? Let's say someone lives in Oregon and they can do a particular job that does not exist in Oregon, but it does exist in Florida, in New York, and in New Jersey. Would they have to move to Florida or New York? The plain language of the regulations in the Social Security Act do not speak to that. I know that there are some courts that have added a judicial glossary to consider those circumstances. What is our precedent on that? In Barker, this Court noted, for example, this is at 882 F. 2nd, 1474, page 1479, and this Court did note that it rejected a racial analysis. Could you please lower the microphone? Sorry, Your Honor. It also noted in Hall v. Bowen that the Sixth Circuit had noted a variety of factors, including the level of disability, the credibility of the vocational expert, the distance the claimant is capable of traveling to work. The Ninth Circuit did not adopt that approach in Barker. They noted that judicial gloss that's been adopted by other courts. But this Court specifically said that it was a factual determination to be determined by a judicial officer, and they cited to Martinez for that case. Well, I didn't quite get the answer to Judge Gould's question. Do you propose that the disjunctive language of the statute means that a person is not disabled so long as by relocating to a region where jobs are available, a job can be procured? Well, what I'm saying, Your Honor, is under the plain language of the Social Security Act and the regulations, that those aren't factors to be considered. The only factors under the plain language to be considered is whether or not the job exists in significant numbers either in the region where the claimant lives or in several regions of the country. The Social Security Act does not take into consideration these other factors about reasonable commute. I understand that. So your position is that even if the jobs don't exist in Oregon, if they do exist in Florida and New Jersey and New York, as Judge Gould indicated, those are regions of the United States still, and the person would not be disabled if those jobs were there. That's correct. Because those factors aren't relevant under the plain language, and Social Security does not take those into consideration, although I'm aware that some courts, like the Sixth Circuit noted in Barker, do take that approach. But the Commissioner would submit that that's not required by the regulations. Is there any circuit that has adopted the approach that the Commissioner advocates? Well, I think that this Court has implicitly in Barker when they noted that the Hall Court had addressed all these factors, and this Circuit just left it in terms of a very simple question about it's a determination to be made by the ALJ. So I can understand that argument that you've done it implicitly, but has this Circuit ever explicitly addressed the issue? And given a reasoned statement, whether someone has to move, whether someone can move to another region of the country for a job, they're not disabled? I'm not aware of that case, Your Honor. But again, the Commissioner asserts that that's just not relevant. The plain language speaks to whether it's in the region where a claimant lives or in several regions of the country. So you'd like us to write an opinion saying that if they can get a job in several regions of the country, that's enough? Well, sure, if the Court were so inclined, yes. But if we wrote the opinion the other way, what would be the result? Well, again, Your Honor, I believe that's contrary to the plain language of the Social Security Act and regulations, and the Court should give deference to that. Ma'am, I ask you this question, referring to your colleague's statement that 101 jobs in the region is not a significant number. Do you have any authority, one way or the other, as to how many jobs must be obtained in order for there to be a significant number? Okay. Well, I think that's engaging in line drawing, Your Honor. And the Commissioner's position is that, consistent with Barker, where this Court said that it's never clearly established the minimum number of jobs necessary to constitute a significant number, that really what the Court should be doing is looking at not in terms of an issue about is there a minimal number of jobs that's necessary to constitute a significant number, but rather look on a case-by-case, individual merits basis. And I do note that in Barker, in fact, this Court relied upon a case called Ervich v. Heckler, which is a District Court of Arizona case. In that case, that was a Fourth Circuit, that was a Step 4 case. The ALJ never reached the determination about whether or not jobs existed in significant numbers at Step 5. Nevertheless, the District of Arizona in that case held that the remaining number of jobs in that case were significant. And the Ninth Circuit found that six jobs in the Los Angeles Orange County area constituted a significant number. Cited with approval to Ervich to say that it was within the parameters of significant numbers found in cases such as Ervich. So it appears that the Ninth Circuit implicitly has considered that a significant number, at least the lowest number, ranged from 150 to 250, which is very close to this case. But I also note that under the Eighth Circuit case of Johnson, that even if we were to assume that 101 surveillance system monitor jobs were not significant, which, of course, the Commissioner disputes, but if you look at the regional numbers we have, local numbers, you have 18,066 jobs. And in Johnson and the Eighth Circuit, 10,000 were sufficient. What do you rely on to dispute that 101 is below the previously accepted range of 150 to 250? Well, again, in Barker, this Court never said that anything less than that number didn't constitute a significant number. And I think the reason they did that was because it's in keeping with the statement that they never have clearly established a minimum number of jobs because this Circuit doesn't engage in line drawing. I wanted to note, though, at the outset, that this whole issue was never raised below by Ms. Hancock. All the issues that are raised in her brief now. Now, the Commissioner did indeed make the concession that five out of the six jobs in this case were not appropriate and she may not be able to perform them. However, as asserted by Ms. Hancock in her reply brief, to say that plaintiff's argument was raised below by defendant is incorrect. The Commissioner did assert in District Court that ALJ probably found that plaintiff could perform other work as a surveillance system on or existing in significant numbers in the national economy. And the Commissioner cited in general to Tackett for that proposition. As your Honors are well aware, Tackett says that an ALJ can meet the burden of establishing that a significant number of jobs exist either through the testimony of a VE or reliance on the medical vocational guidelines in an appropriate case. But the Commissioner never in this case argued, as plaintiff is now belatedly arguing, that the number of surveillance system on or jobs did not exist in significant numbers. And the Commissioner never presented any of the arguments that Ms. Hancock newly presented before this Court in support of this argument. I also note that Ms. Hancock has cited to a number of unpublished Ninth Circuit cases in support of this assertion. And she hasn't demonstrated an exception to the Ninth Circuit rule prohibiting citation. Let's suppose that you're right that this issue as to the sufficient number of jobs in the local economy not being significant was not raised before the Social Security Administration hearing officer at the Appellate Council. What significance is that? Well I think there's enough here that the Court, I mean, first of all the Commissioner would ask that these arguments be held to be waived by Ms. Hancock. Second of all, if the Court doesn't do that, I think there's enough, I think the Court should do that. How could they be waived if there were five jobs or six jobs earlier that were identified and now there's only one? Was there a finding just about this one job by the ALJ? By the ALJ, he didn't specifically say whether or not the one job constituted a significant number, but he gave them as examples. He did not. Okay, then how can there be a waiver on that if he wasn't asked that question? The waiver is that Ms. Hancock never challenged the ALJ's decision on that basis, and I cite to Mackery and Matney in the Commissioner's Brief. And in the context of those cases, this Court was specifically speaking about appellant's arguments that had not been raised below at the district court level. The appellant might have thought there was a significant number of jobs if you look at all the jobs identified. Well, that may be. But first asked the issue about a significant number for this one job after the concession. So, just as one judge, I'm having trouble with that. Well, that may be, but I think it's in keeping with the policy behind the well-established rule in the circuit that issues not raised below in the district court will not be considered the first time of appeal. Essentially, what Ms. Hancock has done now is recast her case at the expense in time of the parties and at the expense of judicial economy. She should have attacked this at the first instance, especially since the Commissioner raised this as a concession. And despite the fact that Allen was decided over a month prior to the submission of appellant's reply brief, this issue was never addressed. I think you're over time, and I think we have your waiver to make. Thank you. Thank you. Would you please address the waiver issue? Yes, Your Honor. The waiver issue, so I can clarify your understanding of this, is that these arguments should be waived because they were not raised below, Your Honor? Yes. Okay. First of all, the issue was raised below by the Commissioner. She raised it after the plaintiff's opening brief. Unfortunately, I was not the attorney below, so I can't tell you what was in that attorney's mind at any point in time. However, he did not raise vocational arguments in his opening brief. The Commissioner, sua sponte, took these jobs off the table, thereby creating the issue. She's right in that the arguments were not raised below, but the issue was raised below. The arguments don't need to be raised below. It's the issue itself, which was created by the Commissioner's attorney, and I would not be standing here today if she had not created that issue. Secondly, the court, this court has the discretion to hear these arguments. There are cases that I can cite to you now that were not in my brief, which I'll be happy to write a supplemental brief on, and I'm referring to Villar v. Crowley Maritime, which was a 1986 case out of the circuit, that arguments that were not raised below, and I'm saying they were raised below, but arguments... In the interest of time... Yes. We have your position. If we need the cases, we'll... Very good. ...ask you for them, because you have limited time. Okay, thank you. And I think there's a sharper question or focus now on the national versus local. Right, although I would like to... So if you could address that issue. Certainly. The national versus regional question and whether, as Judge Gould asked, if a person has to drive and commute a long distance, does that mean that there are no jobs in the regional economy? I actually would like to refocus the court's attention. It's not that I'm avoiding this question. I don't think it's relative to the very narrow issue here of who decides the Chenery issue. This is the absolute supreme issue in this case. Again, addressed by the commissioner. This is controlling authority, not addressed by opposing counsel. The case has to do with factual questions which were raised after the ALJ made his decision. Therefore, the fact finder at the agency level did not make the findings in this case. Okay, and just so I can understand, I take your point about Chenery, but I'm still trying to understand, if the ALJ does get this case back, will he be looking at only the 101 jobs that are in the record, or he would be looking cross-country? And then what would be the factual dispute in the hearing to take into account the concerns about does she have to relocate and how long does she have to drive? Right. Well, he can look at it de novo. How does that come in under the Social Security regulations? Well, under the regulations... How is it relevant whether she has to drive? It's relevant when you're looking at the big picture of whether it's reasonable to have this person do this job. However, 42 U.S.C. 423D does talk about taking into consideration factors such as age, education, and work experience. It's not limited to those three things. It doesn't talk about proximity. No, it doesn't. A broader reading of 423 would suggest that other reasonable factors could enter in. I'm not asking this Court to do that. I really do not think that that is the argument here. I think it will be the argument when we go back, if we go back, at that level, and it would be, you know, possibly we'll be here another day arguing those issues. Today, the issue is who is going to make these factual determinations. Well, a factual determination was made of 18,006 cases of jobs in the national economy. That was a factual determination made. The question is, a legal determination, is that a sufficient determination to say the job's available to this claimant? The legal determination can be made by the appeals court, obviously. However, the factual determination, I would argue, was not made by the ALJ. He never said that the job, whether it's 18,000 or 101, I don't care what the numbers are. It could be 12 million telephone solicitors. He never made that determination of that job sitting alone on the table. He made that determination in concert with five other jobs that had been presented by the two VEs. But there were different numbers for the five other jobs, right? Yeah. And in totality, those jobs together represented significant numbers. He never made a specific finding that the one job... Are you saying that the 18,006 jobs are not simply for security system monitor, but for the other five jobs which are discarded? No, I... I don't really understand what you're saying. Okay. I'm saying that whether it's 101 jobs in the national, in the regional economy and 18,000 in the national economy, whatever the numbers are, he was presented with those numbers, numbers for carnival barker, numbers for information desk clerk. His finding does not separate out those findings. He said that altogether, he listed the amounts of jobs that were given to him by the VE in his findings and then said, based on the testimony of the VE, I conclude that there are significant numbers of jobs that this person can do at step five. Therefore, she's not disabled. He never said, if all those other jobs were pulled out of the mix, this one job standing alone does constitute significant numbers. It very well may be that he will say that on remand, but we will never know if we don't go back. He's the one that has to say it. We can't say it for him. All right. Thank you. I think we have your point. Okay. We appreciate the argument. It was interesting to hear. Thank you, Your Honor. Case argued as submitted.
judges: Fisher, Gould, Bea